UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **MICHEAL RUNNELS**<br>187 George Wythe Way<br>Beavercreek, Ohio 45034<br><br>Plaintiff<br><br>v.<br><br>**FEDERAL BUREAU OF INVESTIGATION**<br>935 Pennsylvania Avenue, NW<br>Washington, DC  20535<br><br>Serve: Civil Process Clerk<br>U.S. Attorney's Office for D.C.<br>601 D Street, NW<br>Washington, DC 20530<br><br>Defendant | Civil Case No. 1:25-cv-1202 |

## COMPLAINT

This case is brought by Plaintiff Michael Runnels against the Federal Bureau of Investigation (the "Bureau") for violating his Due Process rights under the Fifth Amendment and because he entitled to an award of back under the Back Pay Act, 5 U.S.C. § 5596(b)(1). Plaintiff seeks to remedy the Bureau's unreasonable delay in its adjudication of his suspension without pay that prevented him from earning his pay, and is requesting an award of backpay under the Back Pay Act. Plaintiff, by and through his undersigned counsel, hereby files this Complaint and

sues the Bureau for compensatory relief and attorney's fees and costs, and an award of back pay. In support of his claims Plaintiff alleges as follows:

## JURISDICTION

1. This is an action for relief pursuant to the Fifth Amendment and this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as a case arising under Fifth Amendment, and under the Back Pay Act, 5 U.S.C. § 5596(b)(1).

2. Venue is proper in this Court pursuant to 28 U.S. Code § 1391.

## FACTS

3. Mr. Runnels was arrested on October 17, 2020, and was released on October 18, 2020.

4. Mr. Runnels' charges were dropped thirty-one days later, on November 17, 2020.

5. Mr. Runnels, however, was placed on an indefinite suspension without pay before he could return to work.

6. The FBI refused to allow Mr. Runnels to use any of his annual leave or sick leave that he had accrued during this time, forcing Mr. Runnels to survive without pay for over a year. As a result, Mr. Runnels was forced to sell his home and use the proceeds to support himself and his family.

7. On October 29, 2020, Mr. Runnels contacted Ms. Katie Watson, his legal counsel, to inquire about using administrative leave while out on suspension. Ms. Watson promptly responded that she thought Mr. Runnels should be able to use his annual and sick leave while on suspension, but that he would not be eligible to use administrative leave if he did not meet program criteria.

8. Mr. Runnels contacted Mr. Brad Rucker on December 15, 2020, requesting to appeal the denial of using his leave. On December 21, 2020, Mr. Rucker confirmed that Mr. Runnels did not meet the eligibility requirements for administrative leave.

9. Mr. Runnels was also not able to secure outside employment because his status as an Agent prevents him from working outside of the Bureau while on suspension without pay. In addition, Mr. Runnels' security clearance was suspended because of Mr. Runnels' indefinite suspension making it impossible for him to work in an administrative office role while his case was under investigation.

10. Mr. Runnels informed Ms. Watson that his case was submitted to the Analysis and Investigation Unit (AIU) and the Office of the Inspector General (OIG) on January 5, 2021. Ms. Watson promptly requested that Mr. Runnels inform the Government to direct their communications to her as his legal representation.

11. On January 6, 2021, Mr. Runnels emailed Ms. Katherine Brideau requesting to use his annual leave and sick leave accumulated prior to his suspension, stating that he had been told by his attorney and the Ombudsman Office that he was approved to use his leave. Ms. Brideau replied that because of the nature of Mr. Runnels suspension he was ineligible to use any of his leave in lieu of suspension.

12. On January 8, 2021, Ms. Watson contacted Ms. Brideau requesting an explanation for why Mr. Runnels is not able to use his leave in lieu of suspension. Ms. Brideau stated again that due to the criminal complaint against Mr. Runnels he would be ineligible for using his leave, but she further explained that if Mr. Runnels was to be reinstated, he can request back pay for the unpaid time.

13. Later on, January 8, 2021, in response to Ms. Brideau's explanation about Mr. Runnels' ineligibility because of a pending criminal matter, Ms. Watson sent Ms. Brideau confirmation of intent to dismiss or deny all criminal charges from the Nevada District Attorney responsible for Mr. Runnels criminal complaint, and Ms. Watson requested that the Bureau reconsider allowing Mr. Runnels to use his leave. Ms. Brideau responded that she would investigate and update Ms. Watson the following week.

14. Ms. Watson followed up with Ms. Brideau on January 22, 2021, regarding reconsideration of Mr. Runnels leave. Ms. Brideau replied that the determination of using leave is made at the time of suspension and that the Bureau would not make an accommodation for Mr. Runnels. Ms. Brideau reiterated that Mr. Runnels can request back pay from the date he is suspended if the Security Division determines that his clearance should be reinstated.

15. On February 12, 2021, Mr. Runnels informed Ms. Watson that his criminal case had been dismissed on February 10, 2021.

16. The first unreasonable delay was from the time between the original criminal complaint was dismissed on February 10, 2021, and when the Bureau started its investigation on April 12, 2021. This was six months after the arrest and Mr. Runnels' suspension preventing Mr. Runnels from working.

17. Mr. Runnels' case was sent to the Office of Inspector General within the Department of Justice in April 2021, to investigate for administrative misconduct. Mr. Runnels received confirmation that his OIG investigation was starting on April 12, 2021, even though at the time several other agents had been interviewed in the weeks prior.

18. Mr. Runnels performed an interview on May 26, 2021, in his administrative misconduct investigation.

19. Mr. Runnels was informed after his interview that the interview state is considered the last step and that it would take approximately thirty days for the report on the administrative misconduct investigation.

20. When Mr. Runnels followed up after thirty days, on June 25, 2021, however, he was told that the report was "in review" and would be completed shortly. Mr. Runnels followed up on the status of his report every month only to be told that it was still "in review."

21. On August 24, 2021, Mr. Andrew Howard informed Mr. Runnels then attorney, Mr. Jeff Varden, that the documents had been approved and that the report was sent to FBI Headquarters and the Office of Professional Responsibility for review. The documents were in review for longer than the entire duration of the investigation.

22. The Bureau received the documents for review and adjudication on January 13, 2022, where it began their adjudication process that took four months and concluded in April 2022.

23. It is unreasonable that it took eight months for documents to be approved after the investigation concluded.

24. After the Bureau concluded its adjudication, FBI Security then began its security clearance investigation, causing an additional six-week delay.

25. It caused an unreasonable delay that the FBI Security waited to initiate its security investigation until after the Bureau's adjudication was concluded. If FBI Security had conducted its investigation in a timely manner after the criminal complaint was dismissed

then Mr. Runnels would have been eligible for paid administrative leave or office work beginning in February 2021.

26. Ultimately, on April 21, 2022, Ms. Loreto, of the FBI OPR Adjudication Unit II, issued a letter to Mr. Runnels informing him that only a 14 calendar day suspension was warranted.

27. Mr. Runnels was informed by colleagues still working at the bureau that the SAC was not inclined to restore Mr. Runnels to his former position nor did he want to pay Mr. Runnels the back pay that he was owed from his suspension without pay, despite the fact that he had been suspended without pay for a year and a half, when it had been adjudicated that only a 14-day suspension was warranted.

## COUNT I

## VIOLATION OF THE BACK PAY ACT

28. Mr. Runnels realleges and reavers paragraphs 1-27 as if they were expressly stated herein.

29. Mr. Runnels alleges that his due process rights were violated because the Government unreasonably delayed making its final decision in its adjudication of his indefinite suspension without pay. As such, Mr. Runnels is entitled to backpay stemming from the delay as the adjudication of his indefinite suspension determined that the personnel action to suspend him was only warranted for a 14 calendar day time period.

30. The Back Pay Act is a federal statute that entitles federal employees to their back pay because it states that:

> "An employee of an agency who, on the basis of a timely appeal or an administrative determination . . . is found *by appropriate authority under*

> *applicable law,* rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action . . . [is entitled to back pay]."

5 U.S.C. § 5596(b)(1) (emphasis added).

31. The Back Pay Act has two elements: (1) an appropriate authority finds that a personnel action affected Mr. Runnels, and (2) the personnel action must be unjustified or unwarranted. The Back Pay Act applies to Mr. Runnels' employment because the Bureau found him affected by a personnel action which it explained in its April 21, 2022, letter, and because the Bureau determined that only a 14 calendar day suspension was warranted.

32. Plaintiff asks that the Court issue an order finding that he meets the criteria outlined in the Back Pay Act and is therefore entitled to back pay under the Act for the amount of time he was suspended without pay in excess of the 14 calendar day time period, because such period of time was adjudicated as warranted in his circumstances.

## COUNT 2

## VIOLATION OF FIFTH AMENDMENT DUE PROCESS

33. Plaintiff realleges and reavers paragraphs 1-32 as if they were expressly stated herein.

34. Mr. Runnels alleges that his due process rights were violated by the Bureau's unreasonable delay in adjudicating his indefinite suspension, denying him the ability to earn pay and/or to access back pay.

35. Unreasonable delay is tied to the facts and circumstances of each case to determine if the delay is reasonable. There are four factors for determining whether an agency's delay was unreasonable: (1) the length of time that elapsed since the agency first had the duty to act; (2) the reasonableness of the delay using the context of the relevant authorizing statute;

(3) the consequences of the agency's delay; and (3) the balance between the agency's administrative error, convenience, practical difficulty, or need to prioritize in the face of limited resources. *In re International Chemical Workers Union,* 958 F.2d 1144, 1149 (D.C. Cir. 1992); *Cobell v. Norton*, 240 F.3d. 1081, 1096 (D.C. Cir. 2001). Plaintiff must parse out which parts of agency action rise to the level of unreasonable delay because Courts will not look to the proceedings as a whole. *See Desser v. Department of Health & Mental Hygiene*, 77 Md. App. 1, 9 (D. Md. 1988); *see also Polcover v. Secretary of Treasury*, 477 F.2d 1223 (D.C. Cir. 1973). In the context of an indefinite suspension, an agency must move in a reasonable fashion to end the indefinite suspension "following the resolution of the criminal charges." *Dunnington v. Department of Justice*, 956 F.2d 1151, 1156 (Fed. Cir. 1992) (citing *Engdahl v. Department of the Navy*, 900 F.2d 1572, 1578 (Fed. Cir. 1990)).

36. Mr. Runnels was on an indefinite suspension without pay for well over a year after his criminal charges were dropped. The Bureau did not initiate its required investigation into Mr. Runnels suspension until April 12, 2021, over two months after the criminal complaint against him was dropped. As a result, Mr. Runnels suffered an additional two months without pay for himself or his family. Moreover, following Mr. Runnels' interview in his administrative misconduct interview, it took the Bureau an additional eight months to approve the documents from that investigation for a final decision. This was following the interview agents informing Mr. Runnels that it would take approximately thirty days for the documents to be approved after his interview. As a result of these two delays Mr. Runnels went almost a year without pay by the time that the documents are approved.

37. Finally, the FBI OPR Adjudication Unit II ultimately determined that only a 14 day suspension was warranted.

38. When the Court determines there has been an unreasonable delay, the Court must then determine whether the unreasonable delay violates the Fifth Amendment procedural due process rights. The test for determining whether an unreasonable delay violates due process rights requires the court to weigh "the length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant." *U.S. v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 103 (1983).

39. The harm sustained by Plaintiff herein was the continued and prolonged unreasonable delay of Defendant's adjudication of his indefinite suspension without pay. Mr. Runnels was on leave without pay for a year and a half, even though the pertinent adjudication determined that only a 14 day suspension was warranted. Without a paycheck he was forced to sell his home and use the proceeds to support his family because he was not permitted to seek outside employment because of his status as an agent.

40. Plaintiff is entitled to recover reasonable attorney's fees, costs, and litigation expenses from Defendant.

41. This Court is provided the authority to grant Plaintiff's relief including compensatory damages, and an award of back pay.

**RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following relief:

A. The Court issue a Declaratory Judgment that states Mr. Runnels meets all of the criteria to be entitled to backpay under the Back Pay act.

B. The Court issue a Declaratory Judgment that determines that Defendants violated Plaintiff's Due Process Rights; and

C. The Court grant compensatory relief of no less than $250,000, to remedy the unreasonable delay, including awarding attorney fees, costs, and litigation expenses, and an award of back pay, and grant any and all further relief that the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury on any and all issues triable as such.

DATED: April 18, 2025					Respectfully submitted,

*/s/ Tyler Jay King*_____
**Tyler Jay King, Esq.**
Bar No. 979592
WILT TOIKKA KRAFT LLP
1629 K Street NW, Suite 300
Washington, DC 20006
202-508-3648 (office)
202-436-2641 (cell)
tking@wtk-law.com