UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL RUNNELS,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 25-1202 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

In October 2020, plaintiff Michael Runnels, an employee with the Federal Bureau of Investigation ("FBI"), was arrested and criminally charged. Although the charges were eventually dropped, plaintiff's arrest triggered a year-and-a-half internal investigation by his employers, the FBI and the U.S. Department of Justice ("DOJ"), during which time plaintiff was suspended without pay. Plaintiff sued the FBI for the "unreasonable delay," asserting violations under the Back Pay Act, 5 U.S.C. § 5596(b)(1), and the due process clause of the Fifth Amendment. *See* Plaintiff's Complaint ("Compl.") ¶ 3, ECF No. 1. As the remedy, plaintiff seeks declaratory relief and back pay of no less than $250,000. For the reasons discussed below, plaintiff's claims are dismissed for lack of subject matter jurisdiction.

**I.  BACKGROUND**

The facts, as plaintiff alleges and as relevant to this motion, are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). Plaintiff is or was an employee with the FBI.[1] On October 17, 2020, plaintiff was arrested in Nevada and criminally charged for reasons

---

[1]   The FBI is assumed to be plaintiff's employer, though plaintiff's complaint never explicitly says so. *See* Compl. at 1-2; *see also* Defendants' Motion to Dismiss at 6 n.3, ECF No. 12 (assuming the same).

1

not specified in the complaint. *See* Compl. ¶ 3. Although plaintiff's criminal charges were eventually dropped on November 17, 2020, and his case was dismissed on February 10, 2021, the arrest and charges triggered internal investigations by both the FBI and DOJ. *Id.* ¶¶ 4, 10, 15, 26. During the investigation, the FBI suspended plaintiff indefinitely without pay and suspended his security clearance. *Id.* ¶¶ 5, 9. When plaintiff's counsel sought pay for plaintiff during his suspension, counsel was told that plaintiff could request back pay if he were reinstated. *Id.* ¶¶ 12, 14. Plaintiff alleges that, because of his inability to earn a living while the FBI and DOJ investigated, he was forced to sell his home to support his family. *Id.* ¶ 6. On April 21, 2022, approximately a year and a half later, the DOJ and FBI concluded their inquiries and informed plaintiff that he would be suspended without pay for 14 calendar days. *Id.* ¶ 26. Plaintiff alleges he "was informed by colleagues still working at the [FBI] that the SAC was not inclined to restore [him] to his former position [or] . . . pay [him] the back pay that he was owed from his suspension without pay." *Id.* ¶ 27.[2]

      Three years later, on April 18, 2025, plaintiff brought this instant suit requesting declaratory and compensatory relief for the "unreasonable delay" of "a year and a half" between his arrest in October of 2020 and the internal investigation's conclusion in the spring of 2022. *Id.* ¶¶ 3, 26. Nothing in the complaint suggests that, in the intervening three years, plaintiff availed himself of any internal DOJ procedures to request back pay. In the instant lawsuit, plaintiff brings two counts: one under the Back Pay Act, 5 U.S.C. § 5596(b)(1), "because [of] the Government['s] unreasonabl[e] delay[] [in] making its final decision in its adjudication of his indefinite suspension without pay," Compl. ¶¶ 29-30; and one under the due process clause of the Fifth Amendment for "unreasonable delay in adjudicating his indefinite suspension, denying

---

[2] The complaint does not define "SAC."

him the ability to earn pay and/or to access back pay," *id.* ¶ 34.  As relief, plaintiff seeks "a Declaratory Judgment that states [plaintiff] meets all of the criteria to be entitled to backpay under the Back Pay [A]ct"; "a Declaratory Judgment that determines that [d]efendants violated [p]laintiff's Due Process Rights"; and "compensatory relief of no less than $250,000."  *Id.* (Relief).

On July 24, 2025, defendant moved to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6).  *See* Defendant's Motion to Dismiss at 1, ECF No. 12.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish that the court has subject matter jurisdiction over the claims asserted.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted).  Indeed, federal courts "are forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist . . . to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  A lack of subject matter jurisdiction over a case necessitates dismissal of the case.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006); *see also* Fed. R. Civ. P. 12(h)(3) (requiring dismissal of the action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the

3

complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Rule 12(b)(1) grounds for dismissal are examined first, "as subject matter jurisdiction presents a threshold question." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014).

### III.   DISCUSSION

As noted, plaintiff asserts two claims for violation of the Back Pay Act, 5 U.S.C. § 5596, Compl. ¶¶ 28-32 (Count I), and of the due process clause under the Fifth Amendment, Compl. ¶¶ 33-41 (Count II). For the reasons discussed below, plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

#### A.   Back Pay Act Claim

Plaintiff claims he is entitled to back pay "because the Government unreasonably delayed making its final decision in its adjudication of his indefinite suspension without pay," when "the adjudication . . . determined that the personnel action to suspend him was only warranted for a 14 calendar day time period." Compl. ¶ 29. Plaintiff seeks "compensatory relief of no less than $250,000." *Id.* (Relief). This claim fails for at least two independent reasons.

First, to the extent plaintiff *could* bring a Back Pay Act claim in a federal district court, the Tucker Act would require his suit to be filed in the United States Court of Federal Claims. The Tucker Act "vests exclusive jurisdiction in the United States Court of Federal Claims over

claims against the United States for 'liquidated or unliquidated damages in cases not sounding in tort'" for actions seeking more than $10,000.  *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (quoting 28 U.S.C. § 1491).  In *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Supreme Court "listed the Back Pay Act . . . as clearly within the purview of the Tucker Act." *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991); *see also Bowen*, 487 U.S. at 907 n.42 (noting that a claim falling under the Tucker Act must be based upon a statute that can be "interpreted as mandating compensation by the Federal Government for the damage sustained," which include "provisions such as the Back Pay Act" (internal quotation marks omitted)); *Van Drasek v. Lehman*, 762 F.2d 1065, 1071-72 (D.C. Cir. 1985) (holding that jurisdiction was lacking because the back pay claim based on the military's allegedly unlawful promotion decisions fell within the Tucker Act).  Notably, plaintiff offers no response to defendant's argument that the Tucker Act bars his back pay claim in this Court, other than to request "that []his opposition be construed as a motion to transfer venue or to grant Mr. Runnels' leave to file a motion to transfer venue to the Court of Federal Claims."  Pl.'s Opp'n at 5; *see also Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").[3]

---

[3] Defendant protests plaintiff's sudden request to convert his opposition into a motion to transfer his case to the Court of Federal Claims as violating Local Civil Rule 7(m), which imposes a duty to confer with the opposing party on nondispositive motions, *see* Def.'s Reply at 1-2, and contends that this failure alone warrants denial of plaintiff's motion to transfer, *id.* at 2 (citing, e.g., *Mack v. Aspen of D.C., Inc.*, No. 15-cv-1973, 2018 WL 564558, at *7 n.10 (D.D.C. Jan. 24, 2018) ("[Plaintiff] did not comply with Local Civil Rule 7(m)'s meet and confer requirement—a failure that warrants denial of her motion."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) (holding that the parties' "motion to compel must be denied because they failed to confer with opposing counsel in an attempt to resolve the dispute before filing a non-dispositive motion")).  This basis for denial of transfer need not be addressed since, as further discussed in this section, plaintiff has not established on the merits that transfer is warranted under 28 U.S.C. § 1631, which requires, among other things, that the action "could have been brought at the time it was filed or noticed" in the transferee court.  Here, plaintiff's transfer request is puzzling, because plaintiff *concedes* that "[d]ue to the implication of the [Supreme Court's] *Fausto* decision, [he] is barred from seeking review at the Court of Federal Claims."  Pl.'s Opp'n at 5.

Second, however, even a transfer of venue would not render plaintiff's action for back pay viable, because the Civil Service Reform Act ("CSRA") precludes *any* judicial review of plaintiff's claim for back pay. Enacted in 1978, the CSRA created an "elaborate" framework for reviewing adverse personnel action against federal employees, replacing the "haphazard arrangements for administrative and judicial review of personnel action" that existed before the statute's enactment. *United States v. Fausto*, 484 U.S. 439, 443-44 (1988). Under the CSRA, a qualified employee is entitled to a review by the Merit Systems Protection Board, followed by an appeal to the U.S. Court of Appeals for the Federal Circuit. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 6 (2012).

"The detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees." *Dotson v. Griesa*, 398 F.3d 156, 163 (2d Cir. 2005). In "balanc[ing] the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," *Fausto*, 484 U.S. at 445, Congress decided to exclude certain intelligence agencies from the CSRA's remedial procedures, including the right to judicial review, *see* 5 U.S.C. § 2302(a)(2)(C)(ii). As relevant here, "FBI employees are generally excluded from CSRA provisions," *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004), which provides FBI employees only a limited protection from employment-based reprisals for whistleblowing, *see* 5 U.S.C. § 2303(a).[4] In excluding certain intelligence agencies from the CSRA's general remedies, Congress evinced a "desire to insulate intelligence agencies

---

[4] The CSRA provides an exception for FBI employees who are "preference eligible," meaning they "are entitled to specific protections under the CSRA because of prior military experience." *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (citing 5 U.S.C. § 2108(3)). Here, plaintiff has not alleged that he is preference eligible and entitled to the CSRA's protections. *See* Compl., ECF No. 1. Regardless, even if plaintiff were preference eligible and could invoke the CSRA's remedial procedures, plaintiff has not followed those procedures and thus dismissal for lack of jurisdiction would still be necessary. *See* 5 U.S.C. § 7703(b)(1) (requiring administrative exhaustion before the Merit Systems Protection Board and for petitions for judicial review to be filed in the U.S. Court of Appeals for the Federal Circuit).

6

by relegating their employees to internal DOJ review procedures, thereby avoiding external inquiry into sensitive law enforcement and intelligence matters." *McGrath v. Mukasey*, No. 07-cv-11058, 2008 WL 1781243, at *5 (S.D.N.Y. Apr. 18, 2008); *cf. Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (noting, in a case bringing administrative and constitutional challenges to the FBI's hiring policies, that the FBI's "employment practices have been traditionally unreviewable," as made clear by Congress's "consistent[] exempt[ion] [of] the FBI from statutory schemes governing the civil service").

As both the Supreme Court and the D.C. Circuit have emphasized, "the CSRA is the exclusive avenue for suit" for federal employees, "even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see also Elgin*, 567 U.S. at 11 ("[T]he CSRA's elaborate framework . . . demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review[.]" (emphasis omitted)); *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) ("[W]hat you get under the CSRA is what you get.").

In *United States v. Fausto*, for example, a suspended federal employee with the Department of the Interior sued under the Back Pay Act in the U.S. Claims Court (now known as the U.S. Court of Federal Claims), contending that his suspension was in violation of department regulations. *See* 484 U.S. at 441. Yet, because the plaintiff was a "nonpreference excepted service employee"—a category of employees excluded from the CSRA's provisions—he could not avail himself of the CSRA's procedures. *Id.* at 444. The parties disputed "whether that withholding of remedy [under the CSRA] was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA." *Id.* at 443-44. Granting certiorari, the Supreme Court held that

7

even though the plaintiff had no right to administrative or judicial review under the CSRA, the CSRA nevertheless precluded district court jurisdiction over the plaintiff's Back Pay Act claim. *Id.* at 455. The CSRA, the Court reasoned, "established a comprehensive system for reviewing personnel action taken against federal employees." *Id.* The statute's "deliberate exclusion of employees in [plaintiff's] service category from the provisions establishing administrative and judicial review for personnel action," the Court concluded, evinced congressional intent to "prevent[] [plaintiff] from seeking review in the Claims Court under the Back Pay Act." *Id.*

Directly relevant here, many courts, including in this District, have since applied *Fausto* to hold that personnel actions brought by FBI employees are subject to the CSRA's judicial-review restrictions, even if FBI employees generally cannot avail themselves of the CSRA's procedures. *See Kobelia v. F.B.I.*, No. 24-cv-2542, 2025 WL 1444509, at *14-15 (D.D.C. May 20, 2025) (dismissing claims brought by FBI agents challenging restrictions on outside employment, *inter alia*, because the "claims are precluded by the CSRA" even if the plaintiff "cannot prevail in a claim under the CSRA"); *Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015) (noting that "[w]hile decisions concerning 'pay, benefits, or awards' are generally within the scope of the CSRA, . . . such decisions taken at the FBI, however, are not," and thus the plaintiff's challenges to his termination for gross misconduct "fall within the umbrella of the CSRA, which provides him no avenue for judicial review"); *Croddy v. F.B.I.*, No. 00-cv-651, 2006 WL 2844261, at *5 (D.D.C. Sept. 29, 2006) (noting, in a case challenging non-selection for employment, that "the fact that the FBI is generally exempted from the CSRA's scheme does not diminish the scope of the CSRA's preclusive effect"); *Jones v. Holder*, No. 11-cv-5286, 2012 WL 770849, at *2 (N.D. Ill. Mar. 7, 2012) (holding that "[t]he fact that [plaintiff] lacked a remedy under the CSRA [to challenge his discharge] does not entitle him to review in district

court of the FBI's adverse personnel action"); *Chiang v. Gonzales*, No. 05-cv-03273, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006), *aff'd sub nom. Chiang v. F.B.I.*, 278 F. App'x 728 (9th Cir. 2008) ("Because [plaintiff's] claims [challenging the suspension of her security clearance and placement on administrative leave] concern personnel actions by the FBI, they fall within the ambit of the CSRA, and the court may not review them unless the CSRA authorizes review. As an FBI agent, [plaintiff] is excluded from the CSRA. . . . Consequently, her claims cannot be reviewed by this court.").

Plaintiff cites no cases to the contrary with respect to the CSRA's preclusive effect for FBI employees, in fact *conceding* that "[d]ue to the implication of the *Fausto* decision, [he] is barred from seeking review at the Court of Federal Claims" over personnel actions. Pl.'s Opp'n at 5. Plaintiff's only real response is that his action is not personnel-related, "because his claims arise from a violation of his constitutional rights connected to his employment" and he "is only invoking the Back Pay Act as an auxiliary measure." *Id.* at 2.

Plaintiff's attempt to distinguish his claim from a personnel action is not persuasive. Suspensions are quintessential personnel actions explicitly covered under the CSRA. *See King v. United States*, 81 Fed. Cl. 766, 771 (2008) (explaining that "[t]he types of personnel actions encompassed by the CSRA" include "minor adverse personnel actions such as a suspension for 14 days or less," 5 U.S.C. § 7502," and "major adverse personnel actions such as . . . a suspension for more than 14 days," 5 U.S.C. § 7512). Plaintiff claims he is not challenging his suspension, arguing that he seeks only back pay for any suspension beyond the 14-day suspension imposed by the adjudicatory body. Pl.'s Opp'n at 3. However, "[a]n indefinite suspension without pay is one of the adverse personnel actions listed in the CSRA." *Kobelia*, 2025 WL 1444509, at *16 (citing 5 U.S.C. § 7512(2)). Further, the *Fausto* Court has made clear

9

that the CSRA does not exempt actions for back pay from its jurisdictional bar. *Fausto*, 484 U.S. at 455 (holding that the CSRA's "deliberate exclusion of [a category of] employees . . . from the provisions establishing administrative and judicial review" prevents that category of employees "from seeking review . . . under the Back Pay Act").

As to plaintiff's attempt to distinguish his Back Pay Act claim on constitutional grounds, the Supreme Court has squarely held that "the CSRA precludes district court jurisdiction over [personnel-related] claims even [when] they are constitutional claims for equitable relief." *Elgin*, 567 U.S. at 8; *see also id.* at 13 (holding, in federal employees' equal protection challenge to their discharges for failure to register for the draft, that the CSRA's "statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes"). In sum, plaintiff's Back Pay Act claim must be dismissed for lack of subject matter jurisdiction.

### B.     Due Process Claim

Plaintiff alleges "his due process rights were violated by the [FBI's] unreasonable delay in adjudicating his indefinite suspension, denying him the ability to earn pay and/or to access back pay." Compl. ¶ 34. As relief, he seeks a declaratory judgment that "states [he] meets all of the criteria to be entitled to backpay under the Back Pay [A]ct," a declaratory judgment "that determines that [d]efendant[] violated [p]laintiff's Due Process Rights," and "compensatory relief of no less than $250,000." Compl. (Relief).

Sovereign immunity plainly bars plaintiff's due process claim. *See* Def.'s Opp'n at 8-9. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Plaintiff brings a suit for monetary damages against the FBI, but "the United States has not consented to be sued for damages based . . . on constitutional violations." *Cofield v. United States*, 64 F. Supp. 3d 206, 213 (D.D.C. 2014) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476-78

(1994)); *see also Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) ("[S]uits for damages against the United States under . . . the Constitution are barred by sovereign immunity.").

Plaintiff attempts to avoid the jurisdictional bar by repackaging his request for "compensatory relief" as one for "injunctive relief," which plaintiff argues "has historically included reinstatement with back pay." Pl.'s Opp'n at 6. This argument fails. Courts "prohibit[] . . . the creative drafting of complaints . . . to avoid the jurisdictional consequences," such as "by "disguising a claim for money damages as one for equitable relief." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (internal quotation marks and alteration omitted). Indeed, in *Hubbard v. Administrator*, an en banc D.C. Circuit considered a similar argument from a plaintiff who argued he "was entitled to receive back pay . . . as part of an equitable remedy" under the Administrative Procedure Act, which waived sovereign immunity for "relief other than money damages." 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc). The Circuit rejected the plaintiff's argument, holding that back pay constituted "money damages" and that "attach[ing] the 'equitable' label to back pay in no way contradicts the basic conclusion that back pay is still essentially a compensatory device." *Id.* at 537.

Plaintiff's remaining arguments that declaratory relief and federal question jurisdiction are still available also fail. Neither the Declaratory Judgment Act, 28 U.S.C. § 2201, nor federal question jurisdiction, 28 U.S.C. § 1331, waives the federal government's sovereign immunity. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (holding that the federal question statute does not constitute a waiver of sovereign immunity); *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 25 (D.C. Cir. 2014) ("[I]t is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." (quoting *Ali v. Rumsfeld*, 649

F.3d 762, 778 (D.C. Cir. 2011))); *Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 77 (D.D.C. 2021) ("[T]he Declaratory Judgment Act does not provide a waiver of sovereign immunity." (quoting *Stone v. Dep't of Hous. & Urb. Dev.*, 859 F. Supp. 2d 59, 64 (D.D.C. 2012))). Accordingly, plaintiff's due process claim must also be dismissed for lack of subject matter jurisdiction.[5]

## IV.     CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the Complaint, ECF No. 12, for lack of subject matter jurisdiction, is GRANTED.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  November 5, 2025

 

 

_____
**BERYL A. HOWELL**
United States District Judge

---

[5]   Defendant's alternative grounds for dismissal for failure to state a claim need not be addressed.